HOMER CHANDLER

*v.*

LORENZO B. MOREY, Conservator.

*Opinion filed April 16, 1902.*

1. NOTICE—*whether bidder at conservator's sale had notice of reservation is a question of fact.* Whether a bidder at a conservator's sale had notice of a reservation, made by the conservator, of the amount of a judgment for damages for a part of the land taken for the opening of a highway is a question of fact to be determined from the evidence.

2. DAMAGES—*rule as to who is entitled to damages awarded in condemnation.* Ordinarily, if the party who held title to land when

a condemnation judgment awarding him damages was entered, sells the land before the damages are paid, his grantee is entitled to such damages.

3. SAME—*when purchaser is not entitled to damages paid for opening road.* One purchasing land at a conservator's sale with notice that the amount of damages awarded by a judgment previously entered for opening a road across the land was reserved to the estate of the conservator's ward when the same should be paid, is not entitled to such damages.

4. JUDICIAL SALES—*when purchaser is bound by report of sale.* The purchaser at a conservator's sale has a right to appear before the court and object to the report of sale if any statements therein are deemed by him incorrect, and if he does not do so he is bound by the decree approving the sale.

5. SAME—*judicial sales are not within the Statute of Frauds.* Judicial sales are not within section 2 of the Statute of Frauds, and hence if oral reservations are made at the time of the bid they may be enforced though not reduced to writing.

6. CONSERVATORS—*conservator may make reservation, in his ward's interest, at sale.* A conservator may, at the sale of his ward's land, make a reservation that the amount of damages to be paid for the opening of a road across the land shall not go to the purchaser when the judgment is paid, but to the estate of his ward in whose favor the judgment was entered.

7. INTERPLEADER—*court may shape decree to do equity between the parties.* Where a bill of interpleader is answered by both parties, who admit the allegations of the bill to be true and consent to the discharge of the interpleader, but each party claims the fund, the court may so shape its decree as to do complete equity between the parties.

*Chandler* v. *Morey,* 96 Ill. App. 278, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Mercer county; the Hon. FRANK D. RAMSAY, Judge, presiding.

This is a bill of interpleader, filed on May 12, 1900, in the circuit court of Mercer county by the highway commissioners of Mercer township in that county, alleging that a road had been laid out along the north side of the land of one William K. Fulton, described as the west half of section 8 in township 14 north, range 4 west, in said

county; that the damages had been assessed by a jury at $1042.50; that on December 31, 1898, said land was sold by order of the county court of Mercer county by the conservator of said Fulton to the appellant, Homer Chandler; that the said Chandler and the conservator of Fulton both claimed the damages; that the commissioners are willing to pay the same to the person lawfully entitled thereto, and bring the same into court; that Chandler claims that he is entitled to the damages awarded as having purchased the land after the assessment was made, while Fulton, by his conservator, claims that the damages did not go with the land. The bill prays for answers by Chandler and the conservator, and that the commissioners may be allowed to bring the money into court.

Both Chandler and Morey, the conservator, answered the bill and admitted the facts therein stated, and both claimed the damages. Both admitted that the sum of $1042.50 had been paid to the clerk of the court by the commissioners, and agreed that the same should be held by the clerk and paid to the person entitled to the same. On May 23, 1900, the court decreed that the clerk should hold the money and await the further order of the court, and that the commissioners be discharged, and the defendants make an issue between themselves and establish their respective rights to the money.

On January 11, 1901, after hearing had, the court entered a decree in favor of Morey, the conservator, directing the clerk to pay to Morey the amount of the damages, to-wit, $1042.50, to which exceptions were taken by Chandler.

Chandler prayed an appeal to the Appellate Court, which court has affirmed the decree of the circuit court. The present appeal is prosecuted from the judgment of affirmance so entered by the Appellate Court.

The material facts are substantially as follows: On June 17, 1898, a petition was presented to said commis-

sioners of highways of Mercer township for a public high-
way or road commencing at a point on the north line of
the township, and running south and east including a
part of the land of W. K. Fulton, which petition, signed
by several land owners, was filed in the town clerk's of-
fice July 29, 1898. On the latter day the commissioners
refused to grant the prayer of the petition, and an appeal
was taken to three supervisors who, on September 16,
1898, reversed the order of the highway commissioners,
and granted the prayer of the petition, which order of
reversal was signed by the three supervisors and filed in
the town clerk's office on September 16, 1898. A final
order to lay out the road was filed on October 17, 1898,
which recites the proceedings before the highway com-
missioners and the order of reversal on appeal to the
supervisors, and orders the road laid out as prayed for in
the petition, passing over the west half of said section 8
about fifteen rods south of the north end of the Fulton
land, and also reciting that damages had been assessed
for the Fulton land by a jury before a justice of the peace.
An appeal was taken to the circuit court by W. K. Fulton
at the December term, 1898, and a jury was empaneled,
and the damages for the road over Fulton's land were
assessed at $1042.50; and judgment was entered on the
verdict of the jury on December 22, 1898. On December
29, 1898, the supervisors entered an order, establishing
and laying out the road across the north end of said land;
and subsequently the commissioners served notice on the
appellant, Chandler, to open the road.

William K. Fulton was adjudged to be insane, and the
appellee, Lorenzo B. Morey, was appointed his conser-
vator on August 1, 1898. On October 22, 1898, Morey, as
such conservator, presented a petition to the county
court for leave to sell the real estate of said Fulton to
pay debts. On November 7, 1898, a decree was entered
by the county court, directing a sale of the real estate
above described, or so much thereof as might be neces-

sary to pay the debts due from the estate, the decree requiring the sale to be advertised by publication in a newspaper and by the posting of notices. On December 31, 1898, the sale was made by the conservator, and said real estate was sold for cash in hand to the appellant, Homer Chandler, as a whole, for the sum of $15,100.00. On January 4, 1899, the conservator reported the sale to the court, and asked for a decree authorizing him to execute a deed to the purchaser, and out of the proceeds of sale to pay off the debts, etc. On the same day, January 4, 1899, the report of sale of the conservator was approved and confirmed, and he was ordered to execute a deed to the purchaser, conveying said premises, to-wit, the west half of section 8, etc., and out of the purchase money to pay off the encumbrance upon the land, as well as the other debts owing by the said Fulton. On January 7, 1899, a deed was executed by the conservator, Morey, to Homer Chandler conveying the interest of said Fulton in said premises.

BASSETT & BASSETT, for appellant.

CONNELL & THOMASON, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The main question to be determined in this case is, whether the amount of damages, assessed for the opening of the highway across the north end of the half section of land in question, to-wit, the sum of $1042.50, belongs to appellee, as conservator of William K. Fulton, insane, or to the appellant, as purchaser of the property at the conservator's sale.

When the sale was made on December 31, 1898, the judgment, assessing the damages for the opening of the road over Fulton's land at $1042.50, had been rendered, the date of its entry upon the verdict of the jury being

December 22, 1898. But the amount of damages, so as-
sessed, was not paid by the highway commissioners until
May 12, 1900, when the same was paid into the hands
of the clerk of the circuit court for the benefit of the
party, who should be decided by the court to be entitled
to the same.

*First*—It is a question of fact whether or not the ap-
pellant, when he purchased the premises at the conserva-
tor's sale, purchased them subject to the highway laid
out over the north end of the same, and subject to the
reservation of the damages, awarded for the opening of
the highway, to the conservator for the benefit of the
estate of W. K. Fulton.

Appellee, the conservator, being present at the sale,
procured one Thomason to cry the sale of the land, which
lasted over four hours. The crier, in the presence of the
conservator and at his order, made the following an-
nouncement at the sale, to-wit: "That a public highway
had been ordered laid out over the north end of this farm
of William K. Fulton; that damages had been assessed
in the circuit court of this county to Mr. Fulton on ac-
count of laying out that highway, and that he had been
allowed by the jury ten hundred and forty-two dollars
and some cents, and that a judgment had been entered
in his favor for that amount, and that this amount was
reserved to him, Fulton, and that the purchaser or pur-
chasers of this land would take it subject to that high-
way, as ordered laid out." Appellant was present when
this announcement was made, and during the entire time
of the sale. That the announcement in question was made
by the crier is established by the overwhelming weight
of the testimony. The conservator, and Thomason, and
six other witnesses, all swear that the announcement was
made by the crier of the sale substantially as above set
forth. Six witnesses are produced by the appellant who
were present at the sale, and these witnesses, most of
them, confirm the testimony of appellee's witnesses up-

on this subject. Several of them say that they heard Thomason make a statement about the damages to the effect that they were to go to Fulton. Appellant denies that he heard the announcement made as to the highway and the reservation of the judgment. The testimony, however, shows that he was not more than seven or eight or ten feet distant from the crier when the announcement was made. Several witnesses testify, that some one of the bidders at the sale inquired whether the land would be sold subject to the highway, and whether the sale would be subject to the reservation of the amount of the judgment. Thomason swears that appellant asked him if the judgment would go to the purchaser, and stated that, if it did, it would make a difference in his bid, and that he then told appellant that the amount of the judgment was reserved to Fulton and would not go to the purchaser, and that the purchaser would take the land subject to the highway. Morey also swears that he talked with the appellant during the time he was bidding on the land, and told him there was a judgment in favor of Fulton, and that the offer of the land for sale was subject to the right of Fulton to take the amount of the judgment.

After a careful examination of the testimony, it establishes the fact, in our opinion, that the appellant purchased these premises with notice that the amount of the condemnation judgment was to be reserved for the benefit of the estate of the appellee's insane ward.

*Second*—Appellant strenuously insists upon the doctrine, that the judgment of condemnation did not vest in the commissioners of highways any title or right to the land. This is undoubtedly a correct view of the law. Until the compensation, awarded to the owner of property sought to be condemned for public use, is actually paid, the petitioner for condemnation has no right to enter upon the premises, and the owner of the land has no right to the compensation. The judgment of condem-

nation merely fixes the amount of the damages as the amount of compensation to be paid to the owner for the taking of his property. Of itself, it does not pass the title to the land, sought to be condemned, to the petitioner seeking to condemn it. The judgment is conditional, and does not effect the condemnation of the land until the payment of the award by the petitioner. Before payment, the party seeking condemnation may abandon the location, and select another. The party seeking condemnation acquires no vested right until the payment of the damages assessed is made or deposited. The proceeding for condemnation will not be regarded as abandoned if the payment of the damages is made within a reasonable time, and the property condemned is taken possession of within a reasonable time. (*Chicago and Iowa Railroad Co.* v. *Hopkins*, 90 Ill. 316; *City of Chicago* v. *Barbian*, 80 id. 482; *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 148 id. 141; *Schreiber* v. *Chicago and Evanston Railroad Co.* 115 id. 340.)

Under the authorities above referred to, no title to the highway, opened across the north end of the land in question, vested in the highway commissioners until the damages awarded by the judgment of condemnation were paid by the commissioners. Here, however, the damages were finally paid into court for the benefit of the party entitled thereto, and thereby the highway commissioners became vested with the right to open and maintain the highway in question. When the judgment awarding damages was entered on December 22, 1898, Fulton was the owner of the land across which the highway was to be opened. When, on December 31, 1898, appellant purchased the land at the conservator's sale thereof, he purchased it under the same conditions to which it was subject before the sale, and while Fulton was the owner of it. That is to say, he purchased it subject to such right or title as the highway commissioners should have in the portion of the land, across which the highway was

to be opened, when the amount of the condemnation judgment should be paid by them. Even without the announcement of the reservation alleged to have been made at the sale, the appellant took the property subject to the right of the commissioners to acquire the highway by payment of the judgment. All the proceedings for the opening of the highway across this land were of record, and appellant was affected with constructive notice of the same. He was bound to take notice that the judgment for damages which had already been rendered, and the order opening the highway which had already been entered, would become perfected, so as to vest title in the commissioners, upon the payment of the award. Indeed, the act of 1874 "concerning covenants of warranty," provides "that no covenant of warranty shall be considered as broken by the existence of a highway upon the land conveyed, unless otherwise particularly specified in the deed." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 923). A conveyance by one having the title when the judgment of condemnation is entered, and before possession is taken or payment is made, passes the property subject to the right of the petitioner for condemnation to acquire the same upon payment of the amount of the judgment. (*Price* v. *Engelking,* 58 Ill. App. 547). And it is true, as a general thing, that the grantee from the person, holding the title when the judgment of condemnation is entered, is entitled to the compensation when the compensation is paid. In other words, the one who is entitled to receive the award of damages is the person, who is owner when the possession is taken, or the payment of the damages is made. (*Rice* v. *City of Chicago,* 57 Ill. App. 558). The appellant does not deny, as we understand the argument of his counsel, that, upon the payment of the amount of damages awarded, the highway commissioners became entitled to the portion of the land embraced within the highway; but he claims that, inasmuch as he had purchased the land at the conservator's sale and

was the owner of it when the amount of damages awarded was paid by the commissioners, he is entitled to receive the amount so paid. Unquestionably he would be so entitled, if it were not that he purchased the land at the conservator's sale with the distinct understanding that the amount of the judgment of condemnation should be paid to the estate of Fulton.

Not only does the proof show that the announcement above set forth was made by the crier at the sale, but the conservator, in his report of the sale to the court, used the following language: "He further reports that the said land was sold with the recent highway as laid across the north end of it, and the said L. B. Morey, conservator, etc., to have and receive the damages theretofore assessed to W. K. Fulton, insane, consequent upon the locating and laying out of said highway." This report of sale, containing the above statement, was approved and confirmed by the court, and in the decree, approving and confirming the report, the court found "that the said L. B. Morey, conservator as aforesaid, has in all respects conformed to and carried out the former orders and decrees of this court relative to the sale of said land." After appellant purchased the property at the sale, he became a party to the sale, and had a right to appear before the court and object to the report of sale if the statement made in it, as above quoted, was incorrect. Having acquiesced in the report, he must be considered as having adopted it, and is bound by the decree of the court confirming the sale. (Browne on Stat. of Frauds,—5th ed.— sec. 265).

*Third*—Appellant furthermore sets up in his answer, and his counsel claim in their argument, that, if the property was purchased subject to the reservation contended for, the agreement in regard to the reservation was a parol agreement and void under the Statute of Frauds. In reply to this it may be said that the Statute of Frauds has no application to judicial sales. Section 2

of chapter 59 of the Revised Statutes relative to "frauds and perjuries," after providing that no action shall be brought to charge any person upon any contract for the sale of lands, etc., unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, etc., contains the following clause: "This section shall not apply to sales upon execution or by any officer or person pursuant to a decree or order of any court of record in this State." (2 Starr & Curt. Ann. Stat.—2d ed.—pp. 1997, 1998). Judicial sales are not within the Statute of Frauds, and are binding upon the bidder or purchaser without any written contract or memorandum of sale signed by him or his agent. (6 Ballard on Real Prop. sec. 850; *Robertson* v. *Smith,* 94 Va. 250; *Andrews* v. *O'Mahoney,* 112 N. Y. 567). In *Robertson* v. *Smith, supra,* it was said by the court: "Judicial sales made by chancery courts, through their commissioners, are not within the Statute of Frauds, and are binding upon the bidder or purchaser without any written contract or memorandum of sale signed by him, or his agent. By bidding he subjects himself to the jurisdiction of the court, and, in effect, becomes a party to the proceedings in which the sale is made and may be compelled to complete his purchase by the process of the court." In *Andrews* v. *O'Mahoney, supra,* it was also said: "By bidding he subjects himself to the jurisdiction of the court, and in effect becomes a party to the proceeding, and he may be compelled to complete his purchase by an order of the court, and by its process for contempt, if necessary. The Statute of Frauds has no operation in such a case." (See also *Warfield* v. *Dorsey,* 39 Md. 299; 1 Reed on Statute of Frauds, sec. 304; Browne on Statute of Frauds, —5th ed.—sec. 265). Where a purchaser or bidder at such a sale fails to complete his purchase or comply with the terms of the sale, he may be proceeded against by rule and compelled to do so. (*Clarkson* v. *Read,* 15 Gratt. 288). If a bidder at a judicial sale can be forced by the court

to carry into effect the contract evidenced by his bid, although it is not reduced to writing, he can be forced to carry into effect such a bid when made subject to a reservation of the character here under discussion.

Counsel for appellant contend, however, that a deed was here made to him conveying the whole of the half section, and that thereby the verbal contract was executed, so that, the Statute of Frauds being pleaded, parol evidence could not be introduced to affect or vary the deed. Here, parol evidence is not made use of for the purpose of varying the terms of the deed. The conservator's deed, executed to the appellant, was made subject to the right of the commissioners to open the land for a highway when the compensation should be paid. The parol reservation was merely as to the person who should receive the amount of money awarded for damages. The deed upon its face conveys "the interest of said William K. Fulton, insane, in the following described real estate, viz.: the west half of section 8," etc. The decree of sale entered by the county court on November 7, 1898, contained these words: "That upon a sale of said real estate being made, the said L. B. Morey, conservator as aforesaid, make and execute to the purchaser or purchasers of said land good and sufficient deed or deeds to convey the interest of W. K. Fulton therein." Indeed, section 28 of the act in regard to lunatics, etc., provides that "it shall be the duty of the conservator making such sale, as soon as may be, to make return of such sale to the court granting the order, which, if approved, shall be recorded, and shall vest in the purchaser or purchasers all the interest of the ward in the estate so sold." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2669.) What was the "interest" of William K. Fulton which was conveyed by the deed? It was the title to the land sold, subject to the highway to be opened over it, and subject to the right of the commissioners to acquire the same upon the payment of the condemnation judgment.

The purchaser at an administrator's sale is bound by the sale when it is then and there stated by the administrator that it is made subject to an easement, although there is no allusion thereto in the order of sale. Woerner, in his work on the American Law of Administration (vol. 2—2d ed.—marg. p. 1057) says: "And the purchaser is bound by a sale stated by the administrator to be subject to an existing easement, although not alluded to in the order of sale." In *Overdeer* v. *Updegraff*, 69 Pa. St. 110, it was held that an administrator, selling by order of court land which was subject to an easement, might sell it so subject, although it was not noticed in any of the proceedings, and that a purchaser, having bought under conditions mentioning an easement, was estopped from claiming to hold the land free of such easement.

It is furthermore claimed on the part of the appellant, that the conservator had no authority to announce that the sale would be made subject to such reservation. If the conservator had announced any reservation which would operate to the injury of his ward, or which would be of doubtful benefit to the ward, his authority in the matter might be questioned. But it was the duty of the conservator to act in the interest of his ward, and certainly a reservation of the amount of the condemnation judgment for the benefit of his ward was in the interest of the latter. He had the right to make such a reservation, because it was not forbidden by any order of the court and because it inured to the benefit of his ward. A proceeding by the conservator of an insane person for an order of court to sell his land for the purpose of paying his debts, etc., is not adverse to the ward, but, on the contrary, it is for his benefit. (*Dodge* v. *Cole*, 97 Ill. 338).

*Fourth*—It is to be noted that, here, the money, awarded as damages for the opening of the road, was paid into the hands of the clerk of the circuit court by the commissioners of highways, and both the appellant and the appellee entered their appearance, and answered the in-

terpleader, and consented to the discharge of the commissioners, and both of them claimed the amount of the judgment. Where a bill of interpleader has thus been answered, and the defendants thereto consent to interplead, the court may so shape its decree as to do complete equity between the parties. (11 Ency. of Pl. & Pr. p. 475). In *Whitney* v. *Cowan*, 55 Miss. 626, the court said: "The court may, at the final hearing, having the fund in its hands or under its control, fasten upon it, either in whole or in part, any equitable lien or trust which one of the parties may have established, though the proprietary legal title and ownership belong to the other."

Here, the appellant consents to the money being paid into court, and by so doing he admits that the road is to be opened, and that the commissioners have complied with the law. He admits the payment of damages by the commissioners. This being so, he concedes that his deed does not give him the highway, but he voluntarily relinquishes the highway, and comes into court and claims the damages. Hence, the authorities, cited by appellant's counsel, can have no application to the case at bar, inasmuch as appellant has consented to the payment of the money into court, and, by so doing, has made an issue of fact with the conservator upon the question whether or not the money was reserved at the sale. Upon this question the overwhelming weight of the evidence is against him.

For the reasons above stated, we are of the opinion that the decree of the circuit court and the judgment of the Appellate Court, correctly dispose of the questions involved.

Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*