[No. 7225.   Decided October 15, 1908.]

NORTHERN PACIFIC RAILWAY COMPANY et al, Appellants, v.
THE CITY OF GEORGETOWN, Respondent.[1]

EMINENT DOMAIN—DECREE—AWARD OF DAMAGES—ABANDONMENT
OF PROCEEDINGS—EFFECT—BAR—ESTOPPEL.   Where proceedings to
condemn a street across railroad rights of way and tracks resulted
in an award of $12,000 in favor of the defendants, and the city
elected to abandon the proceeding and repealed the ordinance there-
for, the judgment is a bar to a subsequent proceeding brought
shortly after to condemn a street across the rights of way six inches
south of the former location, where the same was brought for the
purpose of evading the prior award, and in the hope of getting a
lower verdict (FULLERTON, J., dissenting).

Appeal by defendant from a judgment of the superior
court for King county, Tallman, J., entered November 16,
1907, upon the verdict of a jury, rendered for nominal dam-
ages by direction of the court, in condemnation proceedings.
Reversed.

*Carrol B. Graves*, for appellants.

*I. H. Randolph* and *Todd, Wilson & Thorgrimson*, for re-
spondent.

DUNBAR, J.—As the statement in appellants' brief seems
to be in exact accordance with the record, we will adopt it as
the statement of the case.   The community known as George-
town has grown up on both sides of the railroad rights of
way of the two appellants, and the territory thus occupied
has been incorporated as the city of Georgetown, a city of
the third class.   The railroad rights of way run at this point
in a northwesterly and southeasterly direction, the business
district and some of the residence district being to the south-
west and the exclusively residence district to the north and
east of these rights of way, at or near the point where the

[1]Reported in 97 Pac. 659.

proposed street is located. In going south upon the west side of the said rights of way, Valley street, now known as Rainier avenue, parallels the rights of way until nearly opposite the proposed street extension, when it turns at a right angle and runs easterly to the rights of way and then runs south parallel with said rights of way. On the east side of the rights of way, such streets as Nora Avenue and Sander avenue run in a northerly and southerly direction, but are not extended so as to intersect the railroad rights of way, and in order for either street to make such intersection, near the point of the proposed street crossing, Nora avenue must be extended in a general southerly direction and then turned in a westerly course, while at Sander avenue the extension must be made in a westerly course from its west marginal line.

In the winter and spring of 1905, the city of Georgetown, by ordinance and by proceedings commenced, undertook to lay out and extend Nora avenue down and across the railroad rights of way of appellants, and across the adjacent lands. Such proceedings were had in the Nora avenue extension that a judgment of condemnation was entered, trial was had upon the award of damages, and final judgment entered in favor of the Northern Pacific Railway Company for the sum of $12,000, and in favor of the Columbia and Puget Sound Railroad Company in the sum of $4,000. This judgment was entered November 20, 1905. Subsequent to such judgment and prior to the commencement of the present proceedings, the city council of Georgetown resolved to abandon the proceedings and repeal the ordinance providing for the laying out of the Nora avenue extension.

On June 11, 1906, the city council of Georgetown provided by ordinance for the extension of Sander avenue, and for the necessary condemnation proceedings. On October 12, 1906, judgment was rendered adjudicating a public use of this proposed improvement, and thereafter on the 7th day of November, 1907, a hearing as to the amount of damages

to be awarded to the Northern Pacific Railway Company and the Columbia and Puget Sound Railroad Company, on account of the crossing of their rights of way by this street, was had, all evidence offered by appellants was excluded, and the jury was instructed by the court to return verdicts for nominal damages. Such verdicts were returned by the jury, and judgment was finally entered upon such verdicts. From such judgment this appeal is taken.

The plat and testimony show that the extension of Sander avenue is located across the rights of way just six inches south of the location of the Nora avenue extension. Appellants' assignment, that the court erred in adjudicating that the improvement proposed was a public use, it will not be necessary to discuss in this opinion. The second assignment is that the court erred in refusing to hold and find that, by the judgment in the Nora avenue proceedings, the city was barred from maintaining the proceedings, these proceedings being for the same project as the prior proceedings, and for the purpose of avoiding the judgment in the prior proceedings. With the view we take of this error, it will not be necessary to discuss the subsequent errors assigned.

The testimony in the case and the maps on file show beyond a reasonable doubt, if not conclusively, that the object of the city in abandoning the Nora avenue extension proceedings and commencing the Sander avenue extension proceedings was simply and exclusively for the purpose of avoiding the award in the first trial, and to obtain a new trial on substantially the same proposition, viz., of connecting by a highway the two districts of the city now separated by the railroad tracks and rights of way, and therefore it would not only be subversive of justice, but would be making a farce of judicial proceedings to allow a litigant to play hide and seek with the judgments of a court by accepting such judgment if it suited him, by rejecting it if it did not, and commencing another action involving the same issues, and so on *ad infinitum*, until

he was satisfied with the result. The law abhors a multiplicity of suits, and will compel the trial of all the issues in one case to prevent the multiplicity. How much more abhorrent the retrial of the same issues in different suits. The law accords to every person, natural or artificial, one fair trial and one only. What would be thought of the attempt of a railroad company to abandon a condemnation proceeding through a citizen's farm because the award was large, and commence another condemnation proceeding with the boundary line of the second six inches from the boundary line of the first? Such proceeding would not be tolerated for a moment, and for the reason that the law is no respecter of persons, it should not be tolerated when the railroad company's property is sought to be appropriated. The city engineer testified that he had consulted with the council about the question, and frankly admitted that the object of the abandonment of the first suit and the commencement of this suit was to get a cheaper proposition. The following is an excerpt from his testimony:

"Q. I will ask you this: Did you ever have any talks with the city council about this; consult with the mayor or city council about this extension? A. I have, sir. Q. Did you consult with the city attorney? A. I have, sir. Q. I will ask you as a matter of the policy and authority of the city, why you did not make the extension of Sander avenue come down opposite the line of Valley street which runs east and west? A. I think the idea was to avoid the damages that were handed down by the court. The amount, I believe, was sixteen thousand or seventeen thousand damages. And also we thought it necessary to connect Sander avenue with Rainier avenue. Q. That is to say, after the judgment was awarded, then to carry out your plan of connecting this side of the town with that side of the town, you adopted the proposed extension of Sander avenue? A. Naturally, yes. Because we thought we could get a cheaper proposition."

As showing that there was but one project, viz., the connection of the part of Georgetown lying to the north of the

railroad with the part lying south, the city engineer testified as follows:

"Q.  The project of extending Nora avenue down and then across the railroad rights of way to Rainier avenue was for the purpose of connecting the part of Georgetown lying to the north and east of these railroads with the part lying south and west of the railroads?  A.  That was the intention, I will admit.  Q.  That was the purpose?  A.  Yes, sir."

It appears that the cheaper proposition referred to had reference exclusively to the amount of the award, and could not have had reference to any topographical change, for a glance at the map, keeping in view that the admitted object of the proceedings was to connect the two different parts of the town, shows that the Nora avenue route was the more feasible and desirable, because it would cross directly opposite to Rainier avenue, making a continuous avenue from one part of the city to another; while the route proposed, in order to reach Rainier avenue has to turn south at a right angle, thereby making a jog, which was avoided in the first proceeding. It is plain that the only object of this proceeding is to obtain a second trial of substantially the same propositions.  Reason and authority both condemn such proceedings.  *Robertson v. Hartenbower*, 120 Iowa 410, 94 N .W. 857; *Chicago etc. R. Co. v. Chicago*, 143 Ill. 641, 32 N. E. 178; *Rogers v. St. Charles*, 3 Mo. App. 41; *District of Columbia v. Moore*, 5 App. D. C. 497.

Reversed, with instructions to dismiss the proceedings.

HADLEY, C. J., RUDKIN, CROW, and MOUNT, JJ., concur.

FULLERTON, J. (dissenting)—I dissent from the judgment in this case, as I think the judgment should be affirmed. But if I am mistaken in this the order of the court should take some other form.  Public rights are being dealt with, and the city of Georgetown should not be forever barred from crossing the railway at this point.