JONATHAN CURRIE *vs.* BANGOR AND AROOSTOOK RAILROAD COMPANY.

Aroostook.    Opinion August 13, 1909.

*Eminent Domain. Prescription. Easements. Railroad Location. "Time of Taking." Damages Agreed Upon. Waiver. Railroad Tracks Intersecting Highway. Revised Statutes, chapter 1, section 6, paragraph X; chapter 51, sections 6, 24, 31, 65 to 78; chapter 52, section 26.*

Public rights acquired by the exercise of eminent domain are paramount to private rights.

Where the use of a road has been permissive and by the indulgence and license of the owner of the land over which the road passes, such permissive use, no matter how long continued, does not create a prescriptive right to use such road.

It would seem from well established principles of law that an easement acquired by prescription, is extinquished when the land is taken for public uses under the right of eminent domain.

Under the law of Maine the time of the taking of land for a railroad location as between the owner of the land and the railroad company, is the time of the filing of the location as required by statute, and that upon the payment within three years of the damages which constitute the "just compensation" for "private property taken for public uses," the title acquired by the exercise of the right of eminent domain becomes perfected and relates back to the time of such legal taking.

It is immaterial whether the damages for land taken for a railroad location are estimated and awarded by the county commissioners according to the statute or are adjusted by mutual agreement between the land owner and the railroad company.

It is competent for the owner of land taken for public uses to waive the formality of a statutory assessment of damages and when he voluntarily accepts a satisfactory amount agreed upon, the constitutional guaranty of a "just compensation" is fulfilled.

After the legal location of a railroad, the safety of public travel requires that the intersection of any highway or town way with the track of such railroad should be under the regulation and control of the railroad commissioners.

On report.    Judgment for defendant.

Action on the case to recover damages for the obstruction by the defendant of an alleged right of way claimed by the plaintiff over

and across the defendant's railroad tracks in Mars Hill, Aroostook County. Plea, the general issue.

Tried at the April term, 1908, of the Supreme Judicial Court in said county. After all the evidence had been taken out, the case was reported to the Law Court "for final judgment; the Law Court to have the same right to pass upon the question of damages that the jury would in case the plaintiff has a cause of action."

The case is stated in the opinion.

*Ransford W. Shaw*, for plaintiff.

*Don A. H. Powers, James Archibald and Bernard Archibald, Louis C. Stearns and Louis C. Stearns, Jr., F. H. Appleton and Hugh R. Chaplin*, for defendant.

SITTING: WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J. In this action the plaintiff seeks to recover damages alleged to have been sustained by him on account of the obstruction by the defendant of a right of way three rods in width which the plaintiff claims to own leading from his land across the defendant's railroad tracks and location to the highway running to the village of Mars Hill.

The defendant admits that in pursuance of the requirements of section 26 of chapter 52 of the Revised Statutes and the decision of this court in *Wilder* v. *Maine Central R. R. Co.*, 65 Maine, 332, the company did erect and endeavor to maintain legal and sufficient fences on each side of its location at the point in question, and thereby necessarily closed and obstructed the way which the plaintiff claimed to own; but the defendant denies that the plaintiff had any right of way across the locus in question prior to or at the time of the taking of the land by the defendant under eminent domain for the location of its railroad. The original location of the railroad in 1892 was changed in 1894. Among the variations then made was the location over the three rod strip now claimed by the plaintiff as a right of way. This modified location was approved by the railroad commissioners October 2, 1904, and it is conceded that prior to that date no right of way across the land in question had

ever been created by any deed or conveyance or other written instrument. It is contended that the plaintiff in common with such of the public generally as had occasion to use it had traveled across it uninterruptedly for more than twenty years and thereby acquired a prescriptive right to do so before the location of the railroad over it in 1894.

At the time of the location of the defendant's railroad and for some years prior thereto, Frank H. Lavine owned the land covered by it at the point in question. There was a gravel pit on his land at or near the river from which Lavine had been accustomed to sell gravel and sand for many years prior to the location, and it appears from the evidence that the purchasers of the sand during those years had driven their teams over Lavine's land to and from the gravel pit until a well defined farm road appeared where the plaintiff now claims a right of way. In times of drought and as occasion might require, the neighbors were also allowed to drive their horses and cattle over this road to the water at the river. After the year 1900 the plaintiff had driven over this road to his starch factory and mill and continued to cross at that point after the location and operation of the railroad. The principal witness for the plaintiff upon this branch of the case thus testifies: "In the first place it was simply a path. Mr. Lavine, the old gentleman, drove his cattle there in the winter season. We all had access to that to water our horses. And then he had a sand pit down there, and later he sold sand. I have been there many a day with a team in company with other men to the sand pit, and it has been a road for years, long before the railroad."

This is substantially all of the evidence in the case upon which the plaintiff's claim of a right of way by prescription is founded, and it is manifestly insufficient to establish the proposition. Search is made in vain for any evidence having a necessary tendency to show that this way had been traveled by the public generally adversely to the rights of the owners of the land for a period of twenty years. On the contrary it satisfactorily appears from all the evidence that the use of the road by Lavine's neighbors and customers was purely permissive, and it is obvious that no term of

permissive enjoyment of such a privilege, however long continued can be adequate to create a prescriptive right. "If the use of the road has been permissive and by the indulgence and license of the owner of the land over which it passes, then such use does not constitute that adverse use which the law requires." *Mayberry* v. *Standish*, 56 Maine, 342.

In confirmation of this view is the significant conduct of Lavine himself. June 13, 1895, he conveyed to Houghton and Richards a portion of his farm, including a right of way three rods wide extending to the county road, the location of which was identical with the right of way claimed by the plaintiff. It is a justifiable inference that at that time more than eight months after the final location of the railroad approved by the railroad commissioners October 2, 1894, Lavine did not understand that the public had a right of way there acquired by prescription ; otherwise he would not be expected to make a conveyance of it to Houghton and Richards in disregard of such prescriptive right in the public.

But even if it be assumed that the plaintiff had a right of way by prescription as claimed by him, it would seem from well established principles of law that such an easement was extinguished when the defendant took the land covered by its location as for public uses. See Revised Statutes, chapter 51, section 24 and chapter 1, section 6, par. X. *Googins* v. *Boston & Albany R. R. Co.*, 155 Mass. 505; 1 Lewis on Em. Domain, section 262 A Note 3.

But the plaintiff contends that he not only had a right of way by prescription, but that he acquired one by deed. He claims that he succeeded by intermediate conveyances to the right of way three rods in width conveyed by Lavine to Houghton and Richards by his deed of June 13, 1895, above mentioned. But as already observed, it appears that the final location of the defendant's railroad with a variation covering the land in question, was approved by the railroad commissioners October 2, 1894, more than eight months before the execution of this deed by Lavine, and that long before that time the defendant had constructed and equipped its railroad and was engaged in running its trains over the location and across the way claimed by the plaintiff. If that part of the three rod strip claimed

by the plaintiff within the limits of the defendant's location was thus legally taken by the defendant before the execution of the Lavine deed of June 13, 1895, it requires no argument to show that it was not in the power of Lavine to create or convey to his grantees a right of way across the defendant's railroad location, and that no such right of way passed to the plaintiff through intermediate. conveyances from Lavine's grantees. Public rights acquired by the exercise of eminent domain are paramount to private rights. Whatever private right of way the plaintiff may have had prior to the location of the railway, was enjoyed subject to the taking of the land for public use, and after a legal location of the defendant's railway the safety of public travel required that the intersection of any highway or town way with the defendant's railway track should be under the regulation and control of the railroad commissioners. R. S., chapter 51, sections 65 to 78 : *In re Railroad Commissioners,* 83 Maine, 273 ; *In re Railroad Commissioners,* 87 Maine, 247 ; *Goding* v. *Railroad Co.,* 94 Maine, 542. And by section 33 of the same chapter, farm crossings are made subject to the order of the county commissioners. There is no evidence that a crossing of any kind over the three rod strip claimed by the plaintiff was ever authorized either by the railroad commissioners or the county commissioners.

It satisfactorily appears that the defendant duly filed its location as stated above and followed and observed all of the preliminary steps and proceedings required by the statute as essential to authorize the company to enter upon the premises in question under and by virtue of its charter. It is provided by section 31 of chapter 51, R. S., that for land thus taken for the location of a railroad, "the owners are entitled to damages to be paid by the corporation and estimated by the county commissioners on written application of either party, made within three years after filing the location."

In *Davidson* v. *B. & M. Railroad Co.,* 3 Cush. 91, Chief Justice Shaw says (page 106) : "The act of filing a location is a formal act of the assertion of a right, and it is notice to the public and to all parties interested. It is a mere act of location and the land may be considered prima facie as taken and the party then owner may claim

accordingly and may recover damages therefor." In *Hazen* v.
*B. & M. Railroad*, 2 Gray, 574, the court say : "The filing of
the location is the act of taking the land. The location when so
filed constitutes the written permanent record evidence of the land
taken. It sets off by metes and bounds the land subjected to the
servitude . . . It is the evidence, the only permanent evi-
dence of what the one has been permitted to take and the other
compelled to relinquish . . . The construction of the road bed
would mark but a part of the land taken." See also *Charleston .
B. R. R. Co.* v. *Co. Commissioners*, 7 Met. 78. "In those states
in which it is held that compensation need not precede or be con-
current with taking, the time of the taking is usually fixed upon as
the date for estimating the damages. In those states the title is
held to vest upon filing a certain instrument of location or appropri-
ation, and the compensation is permitted to be adjusted afterward,
just as in this case the title would probably be held to vest upon the
condition of making compensation, and when made the title would
be perfected from the date of appropriation. Though title does not
vest until "compensation" is made, the date of entry would seem to
be the proper time for estimating the value of the property, as the
title relates back to that time when the compensation is paid over.
II Lewis on Em. Dom. Sec. 477. It is provided by section 6 of
chapter 51, R. S., that after a proposed location under the general
law has been approved by the railroad commissioners "a plan of the
location of the road defining its courses, distances and boundaries"
shall be filed with the clerk of the court of county commissioners
of each county through which the road passes. Section 25 declares
that "The railroad shall be located within the time and sub-
stantially according to the description in its charter, and the loca-
tion shall be filed with the county commissioners, who shall endorse
the time of filing thereon and order said location recorded." In
view of the fact that the location with a plan or description defining
its boundaries does not become public record evidence of the land
taken until it is filed as required by the above statutes, and that
the application for damages must be made "within three years after
filing the location," it is the opinion of the court that under our

law the time of the taking of land for a railroad location as between the land owner and the railroad company is the time of the filing of the location as required by statute; and that upon payment within three years of the damages which constitute the "just compensation" for "private property taken for public uses,"· the title acquired by the exercise of the right of eminent domain becomes perfected and relates back to the time of such legal taking.

In this case, however, it has been seen that not only had the approved location with the requisite plan been duly filed covering the three rod strip claimed by the plaintiff, but there had been actual occupation of the land taken and the road had been constructed and in operation more than six months prior to the execution of the Lavine deed June 13, 1895.

It is obviously immaterial whether the damages are estimated and awarded by the county commissioners according to the statute or adjusted by mutual agreement between the land owner and the railroad company. In this case the damages were agreed upon between the parties November 15, 1895, and on the same day were paid to Lavine who was the owner of the land at the time of the taking, and in consideration thereof Lavine gave to the defendant a deed of all the land covered by its location. But all of the other proceedings prescribed by statute as requisite for a legal condemnation had been duly observed and this conveyance for a public use vested in the defendant the same rights that it would have acquired by an assessment and payment of damages according to the statute. In either event the title becomes perfected from the time of "taking the land by filing the location." II Lewis on Eminent Domain, 293-294; Pierce on Railroads, 218. It is manifestly competent for the owner of land taken for public uses to waive the formality of a statutory assessment of damages and when he voluntarily accepts a satisfactory amount agreed upon between the company and himself, the constitutional guaranty of a "just compensation" is fulfilled. It is also competent for the land owner to waive the payment of any compensation whatever. *U. S. Peg Wood Co.* v. *B. & A. R. R. Co.*, 104 Maine, 472.

It is therefore apparent that the defendant secured a valid location for its railroad over the land in question in the year 1894 and that the attempt of Lavine to create a right of way across it by deed in 1895 was wholly ineffectual. It was the right and duty of the defendant to erect and maintain fences on each side of the location according to the requirements of the statute, although the right of way claimed by the plaintiff was thereby obstructed.

*Judgment for the defendant.*