[L. A. No. 9856. In Bank.—March 14, 1929.]

MAX RUSSAKOV, Appellant, v. THE McCARTHY COMPANY (a Corporation) et al., Respondents.

[L. A. No. 9876. In Bank.—March 14, 1929.]

FLOYD H. HURST, Appellant, v. THE McCARTHY COMPANY (a Corporation) et al., Respondents.

Charles A. Bank for Appellants.

Bauer, Wright & MacDonald, James W. Osgood, Jess E. Stephens, City Attorney, and Lucius P. Green, Assistant City Attorney, for Respondents.

WASTE, C. J.—The above-entitled actions, consolidated for purposes of trial and appeal, were instituted to have declared and enforced a trust in certain moneys awarded to the defendant McCarthy Company by the defendant City of Los Angeles in satisfaction of judgment entered in a certain condemnation proceeding. The defendant city has no interest or concern in the outcome of this litigation other than that of a stakeholder, the award money being in its possession at the commencement of suit. Any claim that the respective plaintiffs may have in and to the disputed fund arises out of and is founded upon assignments, for purposes of collection only, of the rights of persons asserting an interest or estate in the property condemned, by reason of their having agreed and contracted to purchase, from the McCarthy Company, thirteen described lots, a portion of each of which was thereafter appropriated to the public use. It is the theory of the plaintiffs that their assignors, by the agreements to purchase, became the equitable owners of the lots and were, therefore, proportionately entitled to any moneys thereafter awarded for the appropriation by condemnation for public uses of any parts or parcels of the purchased lots. Judgment went for the defendants in each action, and they were dismissed with their costs. The plaintiffs appeal.

The McCarthy Company was the owner of what is known as the McCarthy Bungalow Home Tract No. 2395, in the City of Los Angeles. The portion of the tract with which we are concerned includes lot 6 and lots 20 to 31, inclusive, of block 3, all of which front on Florence Avenue. On April 9, 1921, the defendant city commenced a proceeding to widen Florence Avenue by taking a strip of land twenty

feet in depth from the frontage of all lots facing on that avenue. Title to the thirteen lots herein involved stood in the name of the McCarthy Company at that time, and the company was named as a defendant. A contract with one Herman Fuhrmeister, covering lots 25 and 26, alone antedated the institution of the condemnation proceedings; but, subsequently, and in each instance prior to the entry of the interlocutory judgment therein, the McCarthy Company contracted to sell to the plaintiffs' assignors, or their predecessors in interest, some one or more of the several lots above indicated. On July 24, 1924, the interlocutory judgment was entered, awarding to the defendant McCarthy Company a lump sum of $16,053, the fund here in dispute, as compensation for that portion of the frontage taken from each and all of the lots. When this award was made the terms of three of the contracts, above referred to, covering lots 6, 25 and 26 and 29, had been faithfully performed by the purchasers, and deeds conveying said lots to the respective purchasers had been duly executed and delivered. The remaining eight contracts were still executory.

The complaint filed by the appellant Russakov in action numbered L. A. No. 9856 contains eight causes of action, while that of the appellant Hurst in L. A. No. 9876 contains three. The assigned claims of the respective purchasers and grantees in and to a proportionate part of the award money are set forth.

Certain of the contracts of purchase, viz., those set up in causes of action one, two, three, five and eight of the Russakov complaint, covering lots 6, 30, 23 and 24, 27 and 28, respectively, and those set up in all three causes of action of the Hurst complaint, covering lots 20, 21 and 22, in describing the particular lot or lots therein agreed to be sold and transferred, purported to except from the agreement to sell and convey such part or portion of the particular lot or lots described as might thereafter be condemned and appropriated by the defendant city in widening Florence Avenue. The three deeds referred to also contained such an "exception." No set form of expression appears to have been employed, for each of the several contracts and deeds contained some one of the following four clauses: "except any part of said lot within Florence Avenue as widened by the City of Los Angeles";

"less portion in Florence Avenue street widening"; "subject to Florence Avenue widening proceedings"; "except portion of same taken by City in Florence Avenue widening proceedings."

■ Upon the trial it was urged by plaintiffs and appellants that the intention of the parties as to the disposition of the award moneys was not definitely ascertainable upon a mere reading of the quoted provisions, and that rather than reserving to the McCarthy Company a portion of the lots (and, as a consequence, the moneys awarded for the taking thereof), these "exceptions" could have as well been inserted in the contracts and deeds as a means of protecting the company "from any possible future claims which might be made by any purchaser by reason of having received any lesser amount of property than that described in the contracts." Plaintiffs, therefore, sought to introduce parol evidence in order to "explain what the McCarthy Company meant" by the exceptions in the deeds and contracts, and to establish the existence between the parties of an oral agreement as to the disposition of the award in the condemnation proceedings. The trial court sustained the objection of the defendant company to the introduction of the evidence, on the ground that to admit it would be to alter the terms of the deeds and contracts, which were clear and certain, and free from ambiguity. It also ruled that the various contracts placed the title to the lots, as between the parties, in the McCarthy Company, in whatever condition it might be when the condemnation proceedings were completed, and gave the vendor the right to any award which might be made for the portion of the property which, by reason of the condemnation, the vendor was not required to convey to the purchasers. The plaintiffs being thus precluded from asserting any claim to the money paid for the portions of their respective lots, judgment was entered for the defendants.

We are of the view that the plaintiffs should have been permitted to show, if they could, that there was an agreement concerning the disposition of the money to be paid by the city for the portion of the lots condemned. ■ That a person, to be entitled to moneys awarded as compensation for the condemnation of property, must establish an interest or estate in the thing condemned, is, as an ab-

stract proposition of law, unquestionably sound. But the right to compensation is a personal one which does not run with the land, and does not pass to a vendee of the land after the right accrues in the absence of an express agreement to that effect. ■ Where the right accrues after a conveyance, a vendee or optionee is entitled to compensation for the damage he has suffered. (10 Cal. Jur. 356, and cases cited.) When the several contracts and deeds here concerned were executed, the proceeding looking to the appropriation of a strip of land along Florence Avenue for street widening purposes was pending and undetermined. The interlocutory judgment had not been entered. At that time, therefore, the defendant city had not definitely and finally committed itself to the street widening project. ■ In condemnation proceedings, even the entry of judgment does not pass title to the property sought to be condemned, but merely gives to the public a right to take the property upon paying the value thereof as determined by the judgment. (Code Civ. Proc., sec. 1255a; *Pool* v. *Butler*, 141 Cal. 46, 49, 54 [74 Pac. 444]; 10 Cal. Jur. 435, secs. 125, 126.) The property condemned does not vest in the plaintiff until payment has been made as required by the verdict of the jury or judgment of the court, an order of final condemnation made and recorded in the office of the county recorder.

■ The proceeding commenced by the defendant city being in an undetermined state when the contracts and deeds here involved were executed, it follows as a necessary consequence from what has been said that, without incurring any liability whatever, the city could, at that time, and perhaps for some considerable period thereafter, have elected to abandon the widening of Florence Avenue. If it had seen fit to do so, it would follow that the purchasers and grantees indicated, despite the presence in their respective contracts or deeds of the so-called "exception" clauses, would have taken their respective lots in their entirety, and without diminution, for none of these contracts or deeds purported to reserve to the McCarthy Company any interest or estate in the lots described. The quoted "exceptions" should not be regarded as a restriction of the granting terms of the deeds and contracts, but as an indication that, against the effect of the then pending

condemnation proceeding, the McCarthy Company made no undertaking as to the amount of property conveyed or agreed to be conveyed. (*Price* v. *Engelking*, 58 Ill. App. 547, 552—a case which seems much in point.) That being the case, it cannot be positively and unqualifiedly declared that appellants' assignors were without any interest in the strip of land for the taking of which the award was thereafter made. ■ We are of the view, therefore, that the court below prejudicially erred when it refused to permit the introduction of evidence as to oral agreements or understandings which the appellants claim existed between the McCarthy Company and appellants' assignors concerning the disposition of moneys that might be awarded for any part or parts of the property thereafter appropriated to the public use.

The rejected evidence, if admitted, would not have varied or altered the terms of the contracts or deeds which were made subject to the right of the city to take some part of the land for street purposes when the compensation therefor should be paid. It would have tended merely to establish a parol reservation, if one existed, as to the person or persons entitled to receive or share in the compensation that might subsequently be awarded in the condemnation proceedings. (*Chandler* v. *Morey*, 195 Ill. 596 [63 N. E. 512, 516].) Whether or not there was such an agreement, or whether, when executing the several contracts and deeds, the parties gave due and proper consideration to the ultimate effect and result of the condemnation proceeding, and that such consideration was reflected in the purchase price of the respective lots, can be determined on a retrial and the reception of the evidence in accordance with the views herein expressed.

For the foregoing reasons the judgment in action L. A. No. 9876 is reversed. The judgment in L. A. No. 9856 is also reversed except in so far as it affects the second, fourth and eighth causes of action, as to which the appeal has been heretofore dismissed.

Curtis, J., Preston, J., Langdon, J., Seawell, J., and Richards, J., concurred.